Your Honor, I save five minutes for rebuttal. May it please the Court, Your Honor, my name is Craig Watson and I'm here today representing the appellants Nicholas Dowdle and Colonel Lamar Davis of the Louisiana State Police. I'm not going to belabor the facts extensively because we're not here on a dispositive issue related to the underlying facts. I will simply point out to the Court that this is a 1983 excessive force case involving an officer-related shooting of an armed suspect who pointed a gun at officers. Plaintiffs filed a lawsuit alleging excessive force. My client believed that the allegations as pled in the complaint were insufficient to overcome qualified immunity. But we followed this Court's path in Carswell and said, in the event, Your Honor, you disagree with us and you find that the allegations, which they are only allegations, are sufficient, we would ask that you narrowly tailor the discovery and allow my client the ability to conduct discovery solely on the basis of the qualified immunity issues. The Court granted in part and denied in part the 12b6 motion, but he also denied outright the ability for my client to have the protections of qualified immunity. Specifically, he noted in this circumstance, I do not find that I'm going to limit discovery. I'm going to subject your client to overbroad and burdensome discovery involving the full case. And it's from that order that we seek appellate review today before the Court. And so I'm going to address the two spheres that are before this Court. One is the jurisdictional argument that you're going to hear from my opposing counsel who claims I don't have the right to be here today. And what I would submit to you under jurisdiction that the Court, in numerous cases, has indicated that when you're dealing with the protections of qualified immunity, and you do not, and the Court does not narrowly tailor that discovery, that that, in fact, is a de facto denial of qualified immunity. And therefore, under the collateral order doctrine, this Court is vested with jurisdiction to hear that. And that has been pronounced in the Zapata decision that's been cited in the briefs. It's been picked up in the Carswell decision. And so what I submit to you today is by denying the ability to have narrowly tailored discovery on the issue of qualified immunity, he has gutted the protections that the Supreme Court in Harlow and every Fifth Circuit case that has addressed dispositively the issues of qualified immunity finds that it is salient that a defendant that is asserting qualified immunity not be subjected to broad and overburdensome discovery. And for those reasons, we submit to you that we are appropriately before this Court on jurisdiction. Now, turning to the merits of why we believe that the Court abused its discretion, we need not look further than the recent decision in Carswell where this Court pointed to the very roadmap that we requested of the Court. We said to the Court, if you find that the defendant has pled enough, we disagree with those facts, but we're not at a stage where we can put that record evidence in. And we do disagree with those facts. Give us the opportunity to have the limited discovery that has been allowed in every case. What you're going to see from the opposing counsel, those are cases that didn't involve qualified immunity. My client is entitled to present his record evidence. I should not have to subject my client to unfettered discovery. I shouldn't have to take the plaintiff's deposition, who's the decedent's daughter in this case. I shouldn't have to take the healthcare providers in this case. I shouldn't have to subpoena doctor's records. I shouldn't have to go into post-investigation analysis in this case. I should be relegated to what my client is entitled to under precedential law, limited discovery to ferret out the meat of the case, which is, is my client entitled to the protections of qualified immunity? And by the Court not following Carswell, which unequivocally and can only be read to say this is what our precedent provides. If you deny qualified immunity, finding that the plaintiff has merely stated enough to and this Fifth Circuit says that it is not a once and for all decision, this Court said the next step is the defendants have two options. They can appeal that decision or they can seek the narrowly tailored discovery for which they are entitled to under the law. You sought the narrowly tailored discovery in the alternative when you moved to dismiss? Is that correct? That's exactly right because Carswell had come out in the interim and so we now know what this precedent of the Fifth Circuit has requested us to do. So we said we want narrowly tailored discovery. And candidly, when I saw the judge's decision, it was a one liner as to why he was denying it. He simply said I have discretion and under the circumstances. Well, at this juncture in the posture of the litigation, what are those circumstances? Well, the only circumstances is that which they pled. And that cannot be enough because what it ends up doing is it changes and shifts the burden because now plaintiffs can plead away entitlement to qualified immunity and the other as to whether it's owed, but the underpinnings behind not subjecting a defendant to unbridled discovery. It is immunity. Is there anywhere where the district court identified factual issues that would have precluded qualified immunity at the pleading stage? It did identify that the facts that the plaintiff has pled, but we contradict those facts and we are entitled to bring those facts through discovery. So what it ends up forcing me to do in cases such as this is decide do I want to truncate my whole case and put affidavits in the record in the 12B6 motion, which I'm not ordinarily required to do, and I want the court to look at this as well. What if we didn't follow the 12B6 motion? What if we just answered, went forward with an affirmative defense of qualified immunity and then sought the order from the court and the court denied it? He would have then gutted our ability and it's the same thing. And I think that's why this court used the progeny in Lyons-Booley, which was overruled as to whether or not a defendant is entitled to pre-12B6 discovery. And we know that now under Iqbal that no, that the plaintiff is not entitled to it. It's an up or down call. But you did pick up Lyons-Booley and you said a la carte, the defendant can move the district court for discovery limited to factual disputes relevant to whether QI applies, then reassert QI at the summary judgment stage. And that's precisely what we're requesting that this court do. And the court even noted that the reason why this analysis was put forward was because the basic thrust of qualified immunity is to free officials from the concerns of litigation, including avoidance of disruptive discovery. Well, by allowing all discovery in the case, you have taken, the district court has taken our ability to not be burdened by the disruption of discovery. Going back to some of the prior cases when the issue of discovery came back and forth, they talked about avoidable discovery and overburdened discovery. Well, undoubtedly having to discover information that's not requisite to the qualified immunity could be avoided through a narrowly tailored discovery order, which all cases have done. I have not seen a case come out of the Fifth Circuit or even the district courts where there is not a narrowly tailored. I practiced in 15 years doing this and you always, it's a routine thing that you do. If they get past 12B6, if you even file it, you go at the meat of the case. But instead now I have to decide and tell my client, look, everything the plaintiff said, we disagree with. I've got videotape evidence, I've got records, I've got things that I can do to controvert that. But I'm not going to bring my 12B6 because the court can't consider that on a credibility call. They have to take those facts as true. And then my client's going to ask me the question, well then, do I have to sit through all these other depositions? Are you going to have to spend the money to take the plaintiff's deposition? And I have to tell him, now under this order, I don't know. But what I did tell him was that the Fifth Circuit said no. You get to give a deposition and it can't cover every topic. It can't cover your history. It can't get into whether you were ever divorced. It can't go into whether you ever paid the judgment. Because you're entitled to that standard that's been pronounced under qualified immunity. The only issue that should be before the court on the summary judgment, which is the next stage, is whether the conduct was objectively reasonable and not the full panoply of discovery that's been entered into by the discovery order. So I would say- The issue you want to focus on is just this, the timing of the shooting, whether it was before or after the decedent fell, is that? Yeah, so the issues that will certainly come out are, one, whether we used excessive force and whether that was objectively reasonable. And the facts that are going to be a controvert in this case is whether or not this individual, one, which officer did the shooting? How many bullets each officer fired? When each officer stopped firing? When would an objectively reasonable officer have determined that the individual no longer posed a threat? What was the total duration, and I would submit to you as four seconds, was there a pause in the shooting in order to do a recalculation, which is also something the Fifth Circuit looks. Those are the facts that should be salient and adjudicated at the earliest stage. Is it conceded that the shooting was justified at one time and then stopped being justified at another, or are they disputing the whole thing? They're disputing the whole thing. In fact, they're arguing that we should- Why is, what is the discovery going to help you do? So the discovery is going to be able to put in, one, the body cam of my officer to indicate what exactly he was able to see. There's a question as to whether the individual had one or two weapons on him. There's a question as to which officer the individual raised his gun at. There was a question as to, and when I'm saying a question as to, if you read the complaint, I understand where the district court said they met what they needed to do. But those are just allegations, those are not record evidence. And I'm entitled to put forward the dash cam, the body cam, and I'm also entitled to be able to show through my officer's testimony exactly what he was able to visualize. And what he was going to see. So for example, glaringly omitted from the pleading is any indication that when the officer over 20 times told this individual to put the gun down, do not point the gun at me. If you point the gun at me, I'm going to shoot you. This individual stated, and it's on the body cam, he stated, I am ready to die. That is an indication to an objectively reasonable officer that we are about to have a suicide by cop situation. So those are the record facts that I am entitled to bring in narrowly discovered discovery to then posture before summary judgment. Without having to do the unbridled full discovery of the entirety of the case. And it's for those reasons that we would ask that this court vacate the order on the limitation of the discovery. I'm sorry, on the over breadth of this discovery and allow limited discovery only on the issues of qualified immunity. Which is routinely what is done in the Fifth Circuit and is the exact road map that was picked up by the court in Carswell. And in fact, in July of 2023 in the Parker versus LeBron decision, it then also states to the court in that case. Let's move with Carswell. Here's the law. If you deny it, give a narrowly, terribly discovery, tee it up for summary judgment. So let me ask you, the plaintiff is arguing in this case that Colonel Davis lacks standing, at least in this appeal. How do you respond to that? Yeah, we don't have, originally when we filed this, we were seeking initially to challenge the underlying qualified immunity issue. What we would say is that, and I have seen support in the case law for it, the claims against Colonel Davis are negligent training and supervision. There's undoubtedly, those are intertwined. So if Officer Dowdle, who was the officer on the scene, is determined to be entitled to qualified immunity, undoubtedly there's no reason to go through the discovery on the other end. So there certainly is support for the QI to be determined at the front stage before we ever get into negligent training. Because you cannot be negligent if you are otherwise determined to be objectively responsible. For our purposes on this appeal though, the claim against him really is not at issue. That is correct. It is not. It's just a predicate for what you want to do if you're successful. That is correct. And so I will reserve the five minutes for rebuttal unless this court has any additional questions on these issues. Thank you. Sorry, I'm falling on my duties here. Ms. Perry, yes, thank you. Thank you, Your Honor. Good morning, may it please the court. Allison Perry on behalf of Abhali Malika Asante-Chioke. Your Honors, I have my prepared remarks, but I just want to state at the outset that we think it is inappropriate for appellant to be previewing to this court facts that are not in the record and facts that they are drawing from the body camera footage that they are withholding. And that plaintiff and her counsel have not had the opportunity to review. And that includes the statement that that appellant quoted from the body camera footage. Your Honors, Defendant Dowdell is asking this court to assert interlocutory appellate jurisdiction over the trial court's resolution of case specific questions about the course of pretrial discovery. Dowdell approached the trial court, as his counsel acknowledged just now in his statements, with a request to limit post-motion to dismiss discovery to the issue of qualified immunity. But the trial court, after holding that plaintiff's allegations survived Dowdell's motion to dismiss in a carefully reasoned 21 page opinion. The trial court properly exercised its discretion in determining that limiting discovery was, quote, necessary given the circumstances of this case and the specificity of the facts pled. Dowdell now appeals only that ruling on the scope of discovery. And this court should reject the misguided appeal. First, because this court lacks jurisdiction over the discovery ruling on appeal. And second, even if the court had jurisdiction to review the discovery order, affirmance would be required because there is no discernible abuse of discretion. And the trial court acted well within its discretion in determining the appropriate scope of discovery where there is no requirement to limit it in the way Dowdell has requested. I'll address each of those points in turn. So turning first to jurisdiction, because the order on appeal is non-final in nature, the court may only review it if interlocutory appeal specifically is authorized by statute or doctrine. And Dowdell asked this court to proceed under the collateral order doctrine. The law does not support doing so. And to explain why, I'd like to first situate this within the existing doctrine, next explain why the collateral order doctrine cannot apply here, and finally address why it is imperative that the court decline appellant's invitation to sharply expand the court's jurisdiction by deeming this new category of discovery orders final and subject to immediate appeal. So first to situate the issue. The collateral order doctrine does of course permit a limited set of direct appeals solely on issues of law. When a trial court rejects a defendant's claim of qualified immunity or issues an order, as appellant referenced, that is tantamount to such denial. For example, by declining to rule on the immunity at the earliest possible stage of the litigation. But that doctrine does not authorize Dowdell's appeal today. To be absolutely clear, and as acknowledged in appellant's remarks, Dowdell is not appealing the trial court's ruling that plaintiff's allegations overcame his qualified immunity defense at the motion to dismiss stage. And this brings us to the second point that I want to make on jurisdiction. Because Dowdell is not appealing the denial of his defense at the motion to dismiss stage, the court should ask afresh, could the collateral order doctrine possibly apply to the order that he is appealing? The answer is definitely no. To take up Dowdell's questions presented, the court would need to assert jurisdiction over a determination of what discovery a plaintiff may or may not pursue after surviving a motion to dismiss. And after the trial court has made a determination on that defense at the earliest possible stage of the litigation, as Carswell requires. Of course, rulings on what discovery is and is not allowed are the quintessential district court rulings that are almost never immediately appealable. As the Supreme Court repeatedly has explained, including in Firestone and Mohawk cited in our briefs. So is your proposed jurisdictional rule that essentially we'd never have appellate jurisdiction when it comes to discovery in the QI posture? Your Honor, that is not exactly our proposal. And I think here it's important to draw a line between the cases that appellant is relying on and the posture here. So critically, in Carswell, Zapata, Leonbulos, Bakke, Wicks, all the cases that he cites in his brief, those deal with discovery permitted in a qualified immunity case prior to a ruling on the defense in the motion to dismiss. And this court held in Carswell that it's absolutely critical the defendant asserting that right gets a ruling on his defense at the earliest possible stage. But does the defendant have to choose a motion to dismiss under Rule 12 or a Rule 56 motion? Well, certainly the defendant can have. Well, if the defendant moves under 12B6, like in this case, and is unsuccessful, does that foreclose any type of limited discovery thereafter? Seems not. Absolutely not. Absolutely it does not foreclose it, Your Honor. Our position will be that's a question for the trial court to evaluate. The trial court has carefully analyzed the pleadings, and the trial- Why is that uniquely not subject to appellate review? That's what I'm, I'm trying to understand what, you're not saying that there's no appellate jurisdiction. You're just saying, what exactly? We are saying there is no appellate jurisdiction in this posture, Your Honor, because the order on review is not a denial of the qualified immunity defense. Now what this court has held is that prior to a ruling on the motion to dismiss, if a district court issues a discovery order permitting discovery prior to a ruling on the motion to dismiss, that operates as a denial of the defense because it's depriving the defendant of the right recognized in the case law to a ruling at the earliest possible stage on his defense. So it's subject to appellate review because it operates as a denial of the substantive offense. Okay, so essentially your position is there is never, I'm not trying to put words in your mouth, I'm just trying to understand your position. It sounds like what you're saying is, when it comes to discovery ruling in the QI posture, there is never appellate jurisdiction. I don't mean to be repetitive, but I really want to distinguish between pre-motion to dismiss and post-motion to dismiss. Okay, although I'm not sure why that would be the line. Why are the discovery issues appealable before but not after? Well, it's the line this court drew in Carswell, Your Honor. The court in Carswell said part of the defense is an entitlement to a ruling at the earliest possible stage. And that makes sense. If part of the benefit you're getting is to avoid the burdens of pre-trial discovery, then if the complaint is not meritorious and the facts are not well-pled, absolutely the defendant can move for- Why does that expire between motion to dismiss and summary judgment? Because we believe, Your Honor, that a motion to dismiss is a significant event in the litigation. It's a significant part of narrowing the civil litigation process to only meritorious claims. Our facts are well-pled. We have pled every single fact necessary to overcome Dowdell's qualified immunity defense. But our case law says that summary judgment on qualified immunity is also a significant event. Indeed it is. And appealable. Yes, yes. So again, getting back to Judge Ho's question, why is there a distinction between, you mentioned the discovery before a motion to dismiss and discovery after. It seems like Carswell and Zapata and Lyon-Boulos all outlined the same, I think they call it a careful procedure. Yes. Of how qualified immunity, as an immunity, not as a defense, because it's always going to be a defense, right? Even at trial, we have a pattern jury instruction for qualified immunity. So it's always going to be a defense, but as an immunity from suit, and an immunity from participating in intrusive discovery, like the case law talks about and your opponent mentioned, why is that viewed differently after the defendant moves to dismiss, as opposed to during a summary judgment based on limited discovery? Well, Your Honor, not everyone who puts forth a qualified immunity defense is going to be immune. And that's part of the process we just went through with the trial court and with the motion to dismiss. We are showing at the motion to dismiss stage, and now we're entitled to proceed with discovery. Now, a trial court, in a particular case, is going to evaluate what scope of discovery is permitted. And certainly in a qualified immunity case, maybe sometimes they are going to work. Let me get back to something you just said. It sounds like, and I asked you this earlier, I thought I understood your answer. It sounds like you're suggesting that if a defendant moves to dismiss based on qualified immunity under Rule 12, and loses, that forgoes the limited discovery under Rule 56 motion. That sounds like what you're arguing now. I guess, Your Honor, what I'm arguing is that there's nothing identified in the case law requiring so-called narrowly tailored discovery in every single case, irrespective of the pleadings, irrespective of the scope of factual disputes that will determine qualified immunity. So we don't see an entitlement in this court's precedence to have- Let's be clear in terms of the analysis of precedence. Are you saying that we haven't had a case addressing this issue, this particular posture, or that we've specifically foreclosed it in this posture? No, Your Honor. I'm saying that to the question of whether a defendant would be entitled to narrowly tailored discovery after losing a motion to dismiss. And appellate jurisdiction on that front. Correct. I am saying on appellate jurisdiction, I believe applicable case law forecloses this appeal. And what case would you cite for that? I would cite the Supreme Court's opinion in Johnson v. Jones, which is explaining when a qualified immunity case is subject to collateral appeal. On the question of whether, after losing a motion to dismiss, a defendant is entitled to narrowly tailored discovery, this court does not have an opinion on that. A different procedure was followed prior to this court's ruling in Carswell v. Camp, where, as appellant describes in his brief, there was a two-step procedure for pre-motion-to-dismiss discovery. But the court has not addressed post-motion-to-dismiss discovery. All right, returning to my remarks, Your Honors, just to emphasize the point on collateral appeal. A discovery order almost will never satisfy the three elements necessary for the collateral order doctrine, Sefworth and Cohen v. Beneficial Loan Corporation and its progeny. So Dowdell is asking this court to treat the order on the scope of discovery as transformed into an appealable collateral order simply because it involves his qualified immunity defense. He is describing it as tantamount to a denial of his qualified immunity defense. And as we discussed, what this court has recognized is that in the pre-motion-to-dismiss posture, when a trial court declines to rule on the defense and proceeds to order discovery without permitting the defendant a ruling on his defense, that operates tantamount to a denial of the substantive defense. The scope of discovery after a motion to dismiss is not tantamount to a denial of the defense. The final and perhaps the most critical point I want to make on the issue of jurisdiction is this. Categorizing this discovery order as final is not only inconsistent with the collateral order doctrine, it would also be unworkable. Indeed, it would open the floodgates and subject this court to an unprecedented influx of collateral appeals on non-final discovery issues. The collateral order jurisprudence, of course, is clear. Courts recognize categories of cases, not individual cases, as appealable. And here the only way to conclude that the collateral order doctrine applies to this category of cases would be to conclude that qualified immunity includes an entitlement to limited discovery. In every single case, which attaches before a court determines that the defendant is in fact entitled to immunity in that case. And thus, an order on the scope of discovery operates as a denial of the substantive defense. The problem with doing so is that if this court were to hold that a certain qualified immunity triggers this procedural entitlement. That necessarily would mean that any adverse discovery ruling in any case against the public official immediately could be challenged on interlocutory appeal as tantamount to denying the defense. If the defendant asserting qualified immunity believes that that order exceeds the requisite narrowly tailored scope. Imagine the flood of piecemeal non-final discovery appeals that would follow. As plaintiffs and defendants battle over the meaning and implementation of the phrase narrowly tailored discovery. And ask this court to referee each intermediate skirmish. So when you say the concern about piecemeal, I take it one aspect of this would be instead of one discovery process, you'd potentially have two. Exactly. Right. The first stage to figure out if there's QI, and in the event there isn't still, then you'd do the more robust discovery. How big is the first stage? Just as a practical matter, is the first stage really that cumbersome? Yes, it's an important question, Your Honor. In this case, we believe it would be cumbersome. Okay, so in this case, we have alleged in our complaint a shooting with at least three officer shooters. We have a... 36 rounds fired, as I understand. Yes, 36 rounds fired and 24 shots hitting the victim. We have a bystander who recorded a video, which video is described in the amended complaint. Appellant, of course, has referenced his body camera footage, but there were other officers whose body camera footage would be relevant. There were police vehicles on the scene. We would want the dash camera footage there to fully understand the incident. But just in terms of the first stage of discovery, as I understand it, tell me if I misunderstand it, the issue is whether Mr. Dowdle in particular, whether his shot, whether he fired at all, I guess, and second, whether his shots were before or after he was incapacitated, before your client was incapacitated. Is that accurate? Well, sort of the subsidiary question there, though, is when the decedent was incapacitated and no longer a threat. And that's not, we think it's highly unlikely you're going to get a full answer to that, or the trial court would get a full answer from one video footage. You know, I would point you to this court's opinion in Roque v. Harvall, which we cited in our amended complaint for the clearly established law principle. In Roque, the court relied on two different cameras showing two different angles of the incident. It also, the court's opinion in Roque references the testimony of the multiple officers on the scene. In Roque, the court also referenced expert testimony about when the shooter should have seen the decedent's gun fall to the ground. So let me just spot you this. Given that we're obviously here to decide not just this case, but to establish a principle if it is indeed open-ended, I can certainly imagine fact patterns where this sort of first stage of discovery, if you will, will ultimately be inconclusive. We still don't know. There's still a fact dispute and, therefore, no QI. But I assume you would agree that there would be another set of cases where this sort of first stage discovery will, in fact, lead to a conclusive result. You know what? As it turns out, at least one of these defendants wasn't involved in the actionable conduct, potentially actionable conduct. Why wouldn't that person be entitled to, A, the limited discovery so they can get out of the suit per the principles of QI, and, B, the appellate review in the event the district court doesn't do that correctly? Well, Your Honor, because we — I'm obviously not prejudging what this case will turn out. Understood. Hypothetically, I assume you agree that's going to happen in some fraction of cases. Speaking to the broader principle, we believe this is precisely the role of the trial judge here, okay, to look at the allegations in the complaint and take their expertise as trial managers and expertise as someone who resolves factual disputes to say, is this a case where we can resolve the factual dispute quickly and easily up front, or is this a case where, as in this case, the factual disputes relevant to qualified immunity are inextricably intertwined with the factual disputes online? The picture you're essentially making is, yes, district courts might mess this up from time to time, but it's just not worth the extraordinary burden on the appellate courts. We're going to have all this piecemeal litigation to really deal with a small handful of potential discovery disputes. Is that sort of the idea? Well, I think the principle that applies to collateral appeal generally is that discovery disputes — it's true a trial court doesn't always get the discovery dispute right. The Supreme Court explained in Mohonk that there is another avenue available on discovery disputes. If a civil litigant believes the trial court is absolutely out of line on discovery disputes, it should resist the discovery, trigger a contempt order, and that contempt order is immediately appealable. The Supreme Court said that in Mohonk and Firestone. That's the procedure when you're unhappy with a discovery dispute. I see I only have one minute left, so just turning to the question of, should the court proceed to review the order on appeal notwithstanding the jurisdictional concerns we've described? I want to emphasize that although appellant is referring to a number of this Court's precedents, I really just want to underscore for the Court, those are all about the pre-motion-to-dismiss posture, and the Court's opinion in Carswell is very clear that something important is happening when the defendant is receiving part of his entitlement to — part of the qualified immunity defense is the entitlement to that ruling at the motion-to-dismiss stage, and that's what we're hearing about Zipata in other cases, that the defendant should have received a ruling on that defense before any discovery was exchanged. And I just want to emphasize, make no mistake, as we are discussing, this would be a new rule to track discovery in every single case where the plaintiff survives on the pre-discovery discovery on the issue of qualified immunity, which would drastically upend the course of litigation in any suit against a public official within this circuit. Thank you. Thank you. Mr. Watson, you have reserved five minutes. Thank you, Your Honors. I'd like to start where the appellees started, and I believe that Judge Ho and Judge Englehart's follow-up are illustrative as to why the district court abused its discretion in this case. When asking about jurisdiction, you correctly pointed out, well, what is the difference between the pre-discovery that used to be allowed before the dispositive issue on motion-to-dismiss was done and post? I would argue that there's none. They're simply pointing out to you that the facts in those cases and the procedural posture were different, but that doesn't actually get to the meats of what the court was trying to say when it said discovery has to be narrowly tailored. So there is absolutely no difference, and it goes back to the point I made originally, which Judge Englehart had picked up on, which is I shouldn't have to make that decision as to whether I want to attack it on an MTD or go after a Rule 56 summary judgment. I'm entitled to that limitation of discovery through the progeny of cases because without it, the district court has gutted the application of qualified immunity. And they talked about, well, where is the . . . But in fairness, is opposing counsel correct that this is essentially a new rule that we're having to, I guess, decide one way or the other? I would concede that it could be a fair point, but I would argue that no, the rule has already been established in Carswell. This court specifically laid out the roadmap and said that the defendant has two options. It can seek narrowly tailored discovery. Well, in this case, what do we do? We sought narrowly tailored discovery. The court said no. So from our perspective . . . Well, there's two questions, I think, right? One, is there a right to limited Stage 1 discovery before Stage 2? And two, is a disagreement about Stage 1 subject to appellate review? You are correct about that, Your Honor, but . . . Is that a res nova question for our court? I think the issue of whether or not a court can allow broad discovery as opposed to narrowly tailored has not yet been adjudicated by the Fifth Circuit. But I believe that in Carswell, when this court said the roadmap is a la Louis Boulleau line of cases, that line of cases all talked about narrow discovery. And I have yet to see a Fifth Circuit decision or even an underlying decision where narrowly tailored discovery was not the default, was not the rule. So I would argue that the court in this particular case has gone outside the scope of what every other district court and what every other Fifth Circuit precedent has found, which is that in order to protect qualified immunity, which is immunity from suit, which is immunity from burdensome overbroad discovery, you must give and provide that narrow tailored discovery on the issue of qualified immunity. So you're agreeing we've never said before that there's appellate jurisdiction in this posture, but that we should and that we've never foreclosed that? On this particular and precise act, there is not a case on point with these exact facts, but there is a litany of cases, including the Mitchell case out of the Supreme Court and the Harlow case out of the Supreme Court, that specifically provide this court with that appellate jurisdiction because they say that in Harlow and Mitchell, makes clear that qualified immunity does not shield government officials from all discovery, but only discovery which is either avoidable or overly broad. So the Supreme Court has already laid out that overbroad discovery is not allowed, and then they picked up, and this is the salient point, immediate appeal would lie from these orders because Mitchell and Harlow require that immune defendants be exempt from avoidable and burdensome discovery. And that tracks with what I argued on my preliminary argument, which is, is broad discovery avoidable? The answer is, check, yes. We don't have to go through discovery that's not related to qualified immunity. Is it burdensome? Check. Just so I understand practically speaking, what is the discovery you're looking for at this first stage? The discovery would be limited. I want to be able to sit with my client in a deposition and be able to instruct him not to answer a question that does not relate to the qualified immunity defense. I don't want to have to go into his background and his history and his divorce, whether he can pay a judgment. I don't want to have to take the plaintiff's deposition. We all know the posture of how these cases go. The district court's going to set a rock- How is the plaintiff's deposition? First of all, the plaintiff's deceased, right? It would be the plaintiff's daughter in the case. I'm sorry. How would that—this person wasn't there, right? This person wouldn't be able to testify. Exactly right. But practically speaking, you know, we all know how these courts are going to go. The district court's going to set a scheduling order for all discovery. I'm going to have a dispositive ruling deadline. I'm going to have to do all discovery. I thought the whole point of this was that there would be QI-specific discovery and only QI discovery. That's what— What I'm trying to get a sense of is isn't that actually fairly limited? No. So the district court said, no, you're going to—I'm not limiting it. I'm giving the plaintiffs the ability to do all discovery. But you want to limit it. I want to limit it. Right. And so what I'm saying is under your world, suppose we're open to your argument, what is it that you're looking for in this limited first stage of discovery? I would be able to limit the plaintiffs from getting into issues and discovery that's not related to QI. What do you need? Are you just trying to limit them? I'm trying to limit them to be able to afford my client the protections as provided from law, which is to avoid burdensome, overarching discovery, because I will be obligated under a scheduling order to do the full panoply of discovery. You're just trying to cut off their discovery so that you can get straight to your issue. Exactly right. And that's the burden— Are you saying you don't need discovery at all? No. I'm saying I do want discovery to be able to posit this for motion for summary judgment solely relegated on that issue. But I do not want to be able to— Solely testimony of your client. That's correct. That's all you want. Testimony of my client, dash cams. I don't want them to be able to get into—in routinely cases, I'm able to limit discovery only to QI, and they intend and have requested that the court open the full Pandora's box on discovery, and that is which I want to limit. Thank you both for your time, and thank you, Judge King, remotely. Appreciate it. Well, thank you. That was very well argued on both sides, and the case is submitted.